851 F.2d 1501
 271 U.S.App.D.C. 274
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America
v.
Bennett MASEL, Appellant.
 No. 87-3093.
 United States Court of Appeals, District of Columbia Circuit.
 July 7, 1988.
 
 Before MIKVA, BUCKLEY and SENTELLE, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was considered on the record on appeal from an order of the United States District Court for the District of Columbia and on briefs filed by the parties and argument by counsel. The court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir. Rule 14(c). For the reasons set forth in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED that the judgment of the district court is affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir. Rule 15.
 
 MEMORANDUM
 
 4
 We are again asked to resolve the tension between regulations restricting White House demonstrations and the First Amendment to the Constitution. Because this question has been canvassed and decided by this court very recently, we affirm the judgment of the district court, which fined appellant Bennett Masel $50.00 on his conditional plea of guilty.
 
 
 5
 The facts are not in dispute. On June 7, 1987, Masel was carrying a sign on the White House sidewalk when he was approached by a police officer. The officer warned that he was in violation of a National Park Service regulation because the sign he held was too large. (The National Park Service is responsible for policing the area appurtenant to the White House.) When he continued marching with the sign, he was arrested and charged with a violation of 36 C.F.R. Sec. 7.96(g)(5)(viii)(1986), which states
 
 
 6
 No signs or placards shall be permitted on the White House sidewalk except those ... having dimensions no greater than three feet in width, twenty feet in length, and one-quarter inch in thickness.
 
 
 7
 The government filed an information contending that Masel had carried a sign having dimensions greater than permitted, "that is, the sign was 7 and 1/2"" feet in length, 4 feet 6"' in width and 1/2"' thick."
 
 
 8
 Masel urges us to strike down this regulation as overbroad and impermissibly vague. We need not tarry with the overbreadth argument since this court upheld the very regulation in question against the same constitutional claim of infirmity. In White House Vigil for the ERA Committee v. Clark, 746 F.2d 1518 (D.C.Cir.1984), the court found that the White House sidewalk picketing regulations, including the placard size regulation Masel challenges here, were justified by the "principal interest [of] * * * presidential security," id at 1532. The court held the regulations "narrowly tailored to avert specific forms of terrorism * * * [and] to ensure that activities occurring on the sidewalk are not obstructed from police view." Id. at 1533. The court went on to state that
 
 
 9
 [t]he measures adopted by the Park Service are clearly not the only means by which that agency could have sought to deter illegal activity on the sidewalk. There may even be options the Service rejected which would have promoted its interests in a more effective fashion. We are not at liberty, however, to replace the agency's judgment with our own. It is sufficient that the means selected be "narrowly tailored": that they lie within the range of feasible options the agency was constitutionally permitted to consider. The sign provisions clearly satisfy this element of the time, place, and manner test.
 
 
 10
 Id. at 1534. Nothing in the facts of the case at bar warrants any different resolution of the on-going confrontation between demonstrators and the protectors of regular order.
 
 
 11
 We also dispense easily with Masel's charge of vagueness. Masel claims that the regulation does not clearly forbid "carrying" a sign larger than designated dimensions. The "void for vagueness" doctrine recognizes that unavoidable ambiguity may exist at the fringes of even the clearest statute--and Masel's strained reading shows that this regulation is no exception. However, the Constitution does not require impossible standards of precision in criminal statutes. See United States v. Petrillo, 332 U.S. 1, 7 (1947). The statutory language "no sign shall be permitted * * * " unambiguously forbids the presence of particular signs, however those signs come to be present. Since "carrying" is a common means by which a sign might appear, we think it obvious to all but the most innovative minds that this statute prohibits carrying signs of proscribed dimensions. We thus reject Masel's contention that this regulation is void for vagueness.
 
 
 12
 Masel can fare no better on his claim for the right to a jury trial. The offense to which Masel pleaded guilty carries a maximum penalty of a $500 fine and/or six months in prison. This is classified as a petty offense under 18 U.S.C. Sec. 1. The Supreme Court has indicated that petty offenses carrying a prison sentence of no more than six months generally may be tried without a jury. See Duncan v. Louisiana, 391 U.S. 145, 160-61 (1968). There are two recognized variations on the "six month" rule: a defendant is entitled to a jury trial, regardless of length of sentence, for a crime indictable at common law, see Landry v. Hoepfner, 840 F.2d 1201, 1209 (5th Cir.1988) (en banc), or when the nature of the offense is malum in se, as opposed to merely malum prohibitum. See District of Columbia v. Colts, 282 U.S. 63, 73 (1930). Under these criteria, Masel's demand for a jury trial must fail. His crime carries a sentence of six months or less, is clearly malum prohibitum, and is not indictable at common law.
 
 
 13
 Masel nevertheless argues that he is entitled to a jury trial because he asserts a violation of his First Amendment rights. Masel would have us look at the nature of his defense, rather than the offense with which he was charged. We think such a premise is unworkable. It would make the current limitation on the right to a jury trial turn on the defendant's litigation strategy rather than long-established principles. The case law gives no support to such a theory.
 
 The judgment of the district court is